## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CSPRF 2 LLC, | ) Case No. 25-11348 (CTG) |
| | ) |
| Debtor. | ) RE: D.I. 3 |

**DEBTOR'S RESPONSE TO EMERGENCY MOTION OF CIVIC REAL ESTATE HOLDINGS III, LLC FOR ENTRY OF AN ORDER DISMISSING CHAPTER 11 CASE OR, IN THE ALTERNATIVE, TRANSFERRING VENUE TO CENTRAL DISTRICT OF CALIFORNIA**

NOW COMES, CSPRF 2 LLC (the "Debtor"), and in support of its Response to the Emergency Motion of Civic Real Estate Holdings III, LLC ("Civic") for entry of an Order Dismissing Chapter 11 Case or, in the Alternative, Transferring Venue to Central District of California (the "Motion") states of follows:

**PRELIMINARY STATEMENT**

To the extent that this Chapter 11 filing is being characterized as a serial filing and that the principal of the Debtor, David Blatt, had somehow orchestrated multiple filings, such characterization is not only patently false but is irresponsibly and offensively misleading. Both the Debtor and Civic have lien positions in the same parcel of real estate located in California, 1116 Chantilly Road, Los Angeles, California ("Property") with Civic having the senior position and the Debtor being in a second position.

Both the Debtor and Civic have asserted in prior court filings in California that there is equity in the Debtor's lien position. While there have been other bankruptcy filings in California, those filings were accomplished first by parties incorrectly asserting that they had the authorization to file the Chapter 11 on behalf of the record owner of the Property, Chantilly Road, LLC, in the

1

first instance (which they did not have such authorization) and then next by purported creditors (including the property owner's legal counsel in the first bankruptcy).  Notably, the Debtor was instrumental in getting both of those prior bankruptcy filings dismissed.  It was the Debtor's view that the first filing of Chantilly Road, LLC was a fraudulent filing because the equity interest in Chantilly Road, LLC had been foreclosed upon and was no longer owned by the original principals.  Again, it was the Debtor who was instrumental in getting both Chantilly Road, LLC's bankruptcy cases dismissed.

      The Debtor started foreclosure proceedings against the Property more than a month before Civic began its foreclosure proceedings.  It was the Debtor's foreclosure filing that prompted the first improper and unauthorized or fraudulent bankruptcy filing by Chantilly Road, LLC.  The Debtor is managed by David Blatt, who has decades of experience investing in and raising capital for investment in distressed debt and distressed real estate.  Prior to commencing the Debtor's foreclosure proceeding on the real estate, the Debtor effectuated an Article 9 foreclosure of Chantilly Road, LLC's membership interest.  Because of this, the Debtor was able to effectuate a dismissal of the first Chantilly Road, LLC bankruptcy, claiming that it was only the Debtor (or an affiliate) who was authorized to commence a bankruptcy filing on behalf of Chantilly Road, LLC.  The Debtor was also instrumental in getting Chantilly Road, LLC's second bankruptcy dismissed.

      In the meantime, even though the Debtor had started a foreclosure against the Property well before Civic began foreclosing against the Property with a plan to gain control of the Property and perform some quick maintenance and renovations in order to quickly position the Property for a sale or refinance before Civic would be in a position to complete its foreclosure, because of a quirk in California law, the prior bankruptcy filings of Chantilly Road, LLC allowed Civic to jump in front of the Debtor as far as timing of the foreclosure.  Essentially, California allows a creditor to

re-notice a foreclosure sale during a bankruptcy proceeding without obtaining relief from stay. This is because the view in California is that re-noticing the foreclosure sale is viewed as merely a continuance of the sale. In most other states, if not every other state, the automatic stay would prevent a creditor from re-noticing the foreclosure sale during the pendency of a bankruptcy without relief from stay.

In California, what Civic has done is repeatedly effectuate extremely short "continuances" or re-notices of its foreclosure sale. For instance, Civic had recently re-noticed the foreclosure sale for Wednesday July 16, 2025. The California bankruptcy court had not entered an order dismissing Chantilly Road, LLC's second bankruptcy filing on July 16, 2025 so Civic "continued" the sale until Friday July 18, 2025. The California bankruptcy court entered its order dismissing the second Chantilly Road, LLC bankruptcy filing on July 17, 2025, meaning that Civic was in position to foreclose on the Property the following day. Civic's scheduling of the foreclosure sale gave rise to two significant concerns for the Debtor: (1) that the lack of lead time and advertising of the new sale date and the repeated continuances would effectively chill any bidding and ensure that the price generated as a foreclosure sale would be lower than it would otherwise be expected to be if the foreclosure sale were to be fully re-noticed, effectively eliminating the Debtor's equity interest in the Property; and (2)that it prevented the Debtor from being able to seek relief in the state court. Indeed, as to the second concern, the Debtor did attempt to seek injunctive relief in the California state court on July 18, 2025, after the California bankruptcy court dismissed the second filing, and was informed by the state court that its emergency petition to stay to the sale would be dealt with in due course when the court got to it.

Stated differently, it is only because Civic was so aggressive in re-noticing the foreclosure sale during Chantilly Road, LLC's various bankruptcy cases that the Debtor was effectively denied

3

the opportunity to present its case in the California state court, which forced the Debtor to file the instant Chapter 11. Notably, the Debtor is informed that, notwithstanding the Debtor's filing on Friday July 18, 2025, Civic has again re-noticed the foreclosure sale of the Property for this Thursday, July 24, 2025. Civic certainly cannot be heard to claim that the Debtor is free to pursue its state court remedies when Civic's conduct, which would be viewed as a blatant violation of the automatic stay in every jurisdiction except California, ensures that the Debtor will not be afforded its day in state court. Moreover, it is rather ironic for Civic to be filing a motion on an "emergency" basis when its attempted foreclosure sale has been delayed by mere days. To be clear, it is the Debtor's view that Civic has violated the automatic stay by re-noticing the foreclosure sale. Notwithstanding this, even if Civic has not violated the automatic stay, at a bare minimum, Civic had an obligation to inform this Court that it had re-noticed the foreclosure sale for this coming Thursday and explain why a delay of a matter of days is any kind of emergency.

## ARGUMENT

**This Was Not a Bad Faith Filing**

The determination of good faith "depends on an amalgam of factors and not upon a specific fact." *In re Marsch,* 36 F.3d 825, 828 (9th Cir. 1994). Courts must examine "the debtor's financial status, motives, and the local economic environment." *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). Importantly, good faith is lacking only when "the debtor's actions are a clear abuse of the bankruptcy process."

The timing of a bankruptcy filing before a foreclosure sale does not, by itself, demonstrate bad faith. Indeed, one of the fundamental purposes of the Bankruptcy Code is to provide debtors with an opportunity to preserve equity and maximize value for all creditors. As the court noted in

4

*In re Plumberex Specialty Products, Inc.,* 311 B.R. 551, 560 (Bankr. C.D. Cal. 2004), timing is merely "a factor to be considered" in determining bad faith, not dispositive evidence.

This Debtor has not filed multiple bankruptcies nor has this Debtor in any way conspired or collaborated in any way with the prior bankruptcy filings of Chantilly Road LLC. Rather, to the contrary, this Debtor has been instrumental in the dismissal of those cases. The Debtor is, however, compelled to note that even if there were multiple bankruptcy filings of this Debtor, which there have not been, courts have consistently recognized that two bankruptcy cases do not establish a pattern of abuse that would constitute bad faith. "Filing two chapter 11 cases within a year does not render the second filing a per se bad faith filing." *In re Baribeau*, 603 B.R. 797, 799 (Bankr. W.D. Tex. 2019). *See also In re Massingill,* 2012 Bankr. LEXIS 2442, at *4 (Bankr. N.D. Cal. May 28, 2012) ("Second filing is not per se evidence of bad faith.").

**The filing of this Chapter 11 was not an improper litigation tactic**

In its Motion, Civic argues that the Third Circuit has identified two key elements of a good faith bankruptcy filing. *First*, the petition cannot have been filed "merely to obtain tactical litigation advantages." *NMSBPCSLDHB, L.P., v. Integrated Telecom Express, Inc. (Integrated Telecom Express)*, 384 F.3d 108, 120 (3d Cir. 2004); *see also In re SGL Carbon Corp.,* 200 F.3d 154, 165 (3d Cir. 1999) (dismissing petition on basis that petitioning debtor was not seeking to reorganize and was instead using the bankruptcy court to gain litigation advantages). *Second*, the bankruptcy petition must serve a valid reorganizational purpose. *See Integrated Telecom.*, 384 F.3d at 120.

Civic fails to suggest any tactical litigation advantage that the Debtor hopes to achieve beyond falsely defaming Mr. Blatt and suggesting that he was involved in Chantilly Road, LLC's prior bankruptcy filings as opposed to being instrumental in having those bankruptcy cases

5

dismissed. To be clear, the Debtor was forced to file this case to take advantage of the automatic stay but only because Civic had chilled the foreclosure bidding process by aggressively re-noticing its foreclosure sale while leaving the Debtor no time to obtain any relief in state court. To the extent that this is a litigation tactic, it is hardly an improper litigation tactic to take advantage of the automatic stay in order to reorganize when the Debtor was prevented from obtaining relief in state court only because of the time constraints in the state court.

**The Primrose Factors do not Warrant a Dismissal**

Civic cites to *Primestone Inv. Partners v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.)*, 272 B.R. 554, 557 (D. Del. 2002) for the following factors to consider: (a) single asset case; (b) few unsecured creditors; (c) no ongoing business or employees; (d) petition filed on eve of foreclosure; (e) two-party dispute that can be resolved in pending state court action; (f) no cash or income; (g) no pressure from non-moving creditors; (h) previous bankruptcy petitions; (i) prepetition conduct was improper; (j) no possibility of reorganization; (k) debtor formed immediately prepetition; (l) the debtor filed solely to create automatic stay; and (m) the subjective intent of the debtor.

While some of the Primrose factors apply, Civic falsely claims that "this case checks nearly every box." This is not a dispute that could be resolved in state court because Civic effectively prevented the Debtor from being able to timely obtain relief in state court. While the Debtor does not have any cash or income, the Debtor does have access to DIP Financing. Civic's argument regarding multiple bankruptcy filings is patently false. This Debtor has been attempting to preserve its equity interest the Property and has been instrumental in dismissing the prior bankruptcy filings of Chantilly Road, LLC. To suggest otherwise is outrageous and patently false. There was no improper pre-petition conduct of this Debtor. If anything, this Debtor was forced to

contest and overcome the improper conduct of third parties in connection with the Chantilly Road LLC bankruptcies. There is a clear possibility of reorganization, as Mr. Blatt has the experience and resources to effectively reorganize the Debtor. The Debtor was not formed immediately pre-petition but invested in the Property while it was owned by Chantilly Road, LLC while that entity was under different ownership. The subjective intent of the Debtor is to reorganize and preserve its equity in the Property by obtaining DIP Financing and undertaking some quick maintenance and renovation of the Property towards a property sale that satisfies Civic and recovers Debtor's equity.

**Civic Cannot Establish "Cause" For Dismissal Under Section 1112(b)**

Under 11 U.S.C. § 1112(b), a court may dismiss a Chapter 11 case "for cause" only if the movant establishes that dismissal is in the best interests of the creditors and the estate. The burden of proving "cause" rests squarely with the moving party. *In re Bestwall LLC*, 605 B.R. 43, 48 (Bankr. W.D.N.C. 2019). Civic has failed to meet this burden for multiple reasons.

**There is No "Substantial or Continuing Loss to the Estate" Under § 1112(b)(4)(A)**

To the extent that Civic relies on § 1112(b)(4)(A), this requires Civic to establish both a "substantial or continuing loss to or diminution of the estate" and "the absence of a reasonable likelihood of rehabilitation." Civic cannot satisfy either prong of this test.

To the extent that Civic argued that accruing interest, property taxes, and administrative expenses constitute "diminution of the estate," courts have recognized that this factor is of limited relevance when a debtor is not operating a business. *In re 3 Ram, Inc.,* 343 B.R. 113, 118 n.14 (Bankr. E.D. Pa. 2006) A Debtor's inability to generate income while holding property for sale or development is not, by itself, sufficient to establish "substantial or continuing loss."

Moreover, any accruing expenses must be balanced against the significant equity cushion that exists in the property. Attached to Civic's Motion as Exhibit C (pages 107 – 120) is an affidavit from Mauricio Umansky attesting that the value of the Property was $21 million, which is more than $3 million over what Civic claims it is owed. This equity cushion more than offsets any accruing expenses and contradicts any claims for Civic of "substantial or continuing loss to the estate."

**There is a Reasonable Likelihood of Rehabilitation Through Debtor's New Financing**

Even if Civic could establish the first prong of § 1112(b)(4), they cannot satisfy the second prong requiring "the absence of a reasonable likelihood of rehabilitation."  The Debtor's principal, David Blatt, is a sophisticated investor in distressed debt and distressed real estate and has the resources to provide the Debtor with DIP Financing and obtain new financing in order to re-finance and pay off Civic's debt.  Contrary to Civic's suggestion, Mr. Blatt had no role in Chantilly Road, LLC's prior financial problems (or either of that entity's bankruptcy filings).  He was not involved when Chantilly Road, LLC obtained its financing from Civic or when it defaulted on its obligations.  He was involved in strategically undertaking an Article 9 foreclosure of Chantilly Road, LLC's ownership interest in order to protect the Debtor's equity position in the Property and was instrumental in having the California bankruptcy court dismiss Chantilly Road, LLC's first fraudulent filing on the basis that the ownership of Chantilly Road, LLC was in dispute as well as the second involuntary filing of Chantilly Road LLC after moving for relief from stay to protect its substantial equity interest in the Property.

Here, the Debtor has a viable path to "rehabilitation" through DIP refinancing and payoff of Civic's loan. Through the Chapter 11 process, the Debtor can market the property properly, obtain the highest possible price, and ensure an orderly distribution to all stakeholders.

8

This approach stands in stark contrast to Civic's preferred foreclosure process, which would benefit only Civic and potentially result in a lower sale price due to the rushed nature of a foreclosure sale. An orderly Chapter 11 reorganization is in the best interests of all stakeholders and the estate, directly contradicting the "cause" requirement of § 1112(b).

**This Court Should not Transfer Venue**

The Debtor is a Delaware limited liability company and chose Delaware as its venue. Civic is a Delaware limited liability company and hardly can be heard to complain about having to participate in a bankruptcy proceeding in the same district in which it was created in the first instance. Both parties have engaged Delaware counsel. The Debtor started with Delaware counsel but Civic was required to engage Delaware counsel. Not only did Civic engage Delaware counsel by the first next business day after the bankruptcy filing, but on that same date it filed a 300 plus page motion (with exhibits). Clearly, Civic is not prejudice by proceeding in Delaware when it has already engaged very sophisticated bankruptcy counsel here.

The decision to transfer venue is solely within the discretion of the bankruptcy court. *In re Centennial Coal, Inc.*, 282 B.R. 140, 146 (Bankr. D. Del. 2002). There is a presumption in favor of maintaining the debtor's choice of forum. *In re Borden Chem's. and Plastics Operating Limited P'ship*, 2004 Bankr. LEXIS 1251, 2004 WL 1887532, *2 (Bankr. D. Del. 2004); *In re Ocean Properties of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988).

In determining whether to transfer venue, bankruptcy courts generally take the following eight factors into account:

(1) the location of the plaintiff and defendant;

(2) the ease of access to the necessary proof;

(3) the availability of subpoena power for the unwilling witnesses;

9

(4) the expense related to obtaining willing witnesses;

(5) the enforceability of any judgment rendered;

(6) the ability to receive a fair trial;

(7) the state's interest in having local controversies decided within its borders; and

(8) the economics of the estate administration.

*See In re Borden Chem.'s and Plastics Operating Limited P'ship,* 2004 Bankr. LEXIS 1251, 2004 WL 1887532, at *2 (*citing Hechinger,* 288 B.R. at 402-03); *Continental Airlines Inc. v. Chrysler*, 133 B.R. 585, 587-88 (Bankr.D. Del. 1991).

Again, both the Debtor and Civic are Delaware limited liability companies. Most, if not all, of the relevant documents are likely in electronic format and likely stored in a computer cloud. The ease of access to proof would have to be considered neutral. It is not known whether it will be necessary to subpoena any witnesses, but the Debtor believes that most if not all of the issues will be addressed by documents as opposed to any witness that would testify about what she or he saw or what they can recall. It is not known what willing witnesses might be called but the Debtor's principal, David Blatt, resides on the East Coast, having lived in New York and Florida, and Delaware is more convenient forum him than California. Other than California's interest in having local controversies decided within its borders, all of the factors are essentially neutral and, even with respect to California's purported interest, the bankruptcy is largely expected to address matters involving Federal bankruptcy law as opposed to specific issues of California law. Accordingly, the presumption in favor of the maintaining the debtor's choice of forum should control and this Court should retain jurisdiction.

**CONCLUSION**

The instant bankruptcy filing by this Debtor was not done in bad faith. It was done for the proper purpose of reorganizing this Debtor. Civic's attempt to establish bad faith on the part of this Debtor by alleging multiple bankruptcy filings in wildly inaccurate and should be rejected out of hand as it is simply not true. Civic's Motion should be denied and the Debtor should be granted such other relief as is just and proper.

Dated: July 23, 2025
       Wilmington, Delaware

**GELLERT SEITZ BUSENKELL & BROWN, LLC**

*/s/ Charles J. Brown, III*
Charles J. Brown, III (DE 3368)
1201 N. Orange St., Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile: (302) 425-5814
Email: cbrown@gsbblaw.com

*Proposed Attorneys for Debtor*